Gene M. JACKSON, David Cooper, and J.R. Jones, Plaintiffs,

v.

FEDERAL DEPOSIT INSURANCE CORPORATION, in its capacity as receiver of the Energy Bank, N.A., Defendant.

FEDERAL DEPOSIT INSURANCE CORPORATION, in its Corporate Capacity, Intervenor,

v.

Gene M. JACKSON, David Cooper, and J.R. Jones, Defendants in Intervention.

No. CA3–85–0395–D.

United States District Court, N.D. Texas, Dallas Division.

Feb. 18, 1987.

---

Lawrence G. Newman of Law Firm of Lawrence G. Newman, Dallas, Tex., for plaintiffs/defendants in intervention.

William M. Parrish, C. Steven Bradford of Jenkins & Gilchrist, Dallas, Tex., for defendant/intervenor.

## MEMORANDUM OPINION AND ORDER

FITZWATER, District Judge.

The issue presented is whether there is an implied right of action for a violation of

§ 7 of the Securities and Exchange Act of 1934, 15 U.S.C. § 78g, and Regulation U of the Federal Reserve Board, 12 C.F.R. § 221.1 *et seq.* (1984). The court must decide whether the Supreme Court's decision in *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), calls into question the Fifth Circuit's holding in *McCormick v. Esposito,* 500 F.2d 620 (5th Cir.1974), that there is a private right of action. The court concludes, in light of the teachings of *Cort,* that there is no implied right of action. Accordingly, these claims are dismissed.[1]

## I.

### FACTUAL BACKGROUND

According to their first amended complaint,[2] plaintiffs entered into a series of loan agreements with The Energy Bank, N.A. ("Energy Bank") for the purpose of purchasing a margin stock account. According to plaintiffs, Energy Bank knew or should have known that the loans were made for this purpose and that the proceeds of the loans which were actually used for this purpose exceeded the margin limitations [3] established by § 7 and Regulation U, thereby violating that section and that regulation. Plaintiffs seek damages equal to the principal, if any, and interest they have paid on the various loans and equitable relief in the form of rescission for the alleged violations of § 7 and Regulation U.

## II.

### DISCUSSION

In *McCormick v. Esposito,* the Fifth Circuit recognized the existence of an implied,

---

1. The court does not now dismiss the action in its entirety. Plaintiffs, on January 30, 1987, moved for leave to file a second amended complaint. Depending upon whether the motion is granted, the court will decide whether dismissal of this action is appropriate.

2. For purposes of this motion the court assumes the truth of plaintiffs' well-pleaded allegations.

*See Watts v. Graves,* 720 F.2d 1416, 1419 (5th Cir.1983).

3. For example, the proceeds from a July 21, 1983 loan to Jackson were approximately 79% of the loan value of the collateral securing the loan.

private right of action for violations of § 7 and Regulation U. The viability of *McCormick*, however, is now in question because of the Supreme Court's subsequent decision in *Cort v. Ash*. In *Cort,* the Supreme Court set forth four criteria for determining whether a statute implies a private right of action:

 (1) whether the plaintiff is a member of the class for whose "especial benefit" the statute was passed;

 (2) whether there is any indication of legislative intent, explicit or implied, either to create a private right of action or to deny one;

 (3) whether a private right is consistent with the underlying purposes of the legislative scheme; and

 (4) whether the claim is one traditionally assigned to state law so that it would be inappropriate to infer a claim based on federal law.

*Id.*, 422 U.S. at 78, 95 S.Ct. at 2087. Following *Cort*, the Supreme Court has stated that the second of these factors—whether there is any indication of Congressional intent, explicit or implicit, to create or deny a private remedy—is the primary issue and the *Cort* mode is but one of several permissible approaches to ascertaining that intent. *Touche Ross & Co. v. Redington*, 442 U.S. 560, 575–76, 99 S.Ct. 2479, 2488–89, 61 L.Ed.2d 82 (1979). *See Allison v. Liberty Savings*, 695 F.2d 1086, 1088 (7th Cir.1982) (all four factors are not equally weighted; the central inquiry is whether Congress intended to create a private right of action).

Since *Cort*, every court of appeals that has reviewed whether there is an implied, private right of action under § 7 and its regulations has denied such a remedy.

*Walck v. American Stock Exchange, Inc.*, 687 F.2d 778 (3d Cir.1982), *cert. denied*, 461 U.S. 942, 103 S.Ct. 2118, 77 L.Ed.2d 1300 (1983); *Stern v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 603 F.2d 1073 (4th Cir.1979); *Gilman v. Federal Deposit Insurance Corp.*, 660 F.2d 688 (6th Cir.1981); *Gutter v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 644 F.2d 1194 (6th Cir.1981), *cert. denied*, 455 U.S. 909, 102 S.Ct. 1256, 71 L.Ed.2d 447 (1982); *Bassler v. Central National Bank*, 715 F.2d 308 (7th Cir. 1983); *Utah State University of Agriculture and Applied Science v. Bear, Stearns & Co.*, 549 F.2d 164 (10th Cir.), *cert. denied*, 434 U.S. 890, 98 S.Ct. 264, 54 L.Ed.2d 176 (1977). In many instances the circuits now deny a private remedy even though they had previously recognized one. The position of the courts has changed because they must now evaluate the 1970 addition of § 7(f) to 15 U.S.C. § 78g in light of the 1975 *Cort* test.

Prior to § 7(f) the courts gave great weight to the fact that the § 7 prohibitions did not extend to the investor, but only to the broker. This was interpreted as a legislative intention to favor the investor and to give him a right of action against the only party to whom the prohibition applied—the broker. *Stern*, 603 F.2d at 1080. With the 1970 addition of § 7(f), however, the investor has become equally responsible with the broker for observing the margin requirements of § 7.[4] The courts have uniformly held that the addition of § 7(f), with its change in the status of the investor under the statute, is inconsistent with the notion that Congress intended the statute to be for the investor's protection. As the Fourth Circuit held in *Stern*:

 Neither reason nor precedent can be marshalled in support of a conclusion

---

**4.** 15 U.S.C. § 78g(f) provides, in pertinent part:

 It is unlawful for any United States person, or any foreign person controlled by a United States person or acting on behalf of or in conjunction with such person, to obtain, receive, or enjoy the beneficial use of a loan or other extension of credit from any lender (without regard to whether the lender's office or place of business is in a State or the transaction occurred in whole or in part within a State) for the purpose of (A) purchasing or carrying United States securities, or (B) purchasing or carrying within the United States of any other securities, if, under this section or rules and regulations prescribed thereunder, the loan or other credit transaction is prohibited or would be prohibited if it had been made or the transaction had otherwise occurred in a lender's office or other place of business in a State.

that Congress, whose intent must be our polestar in this determination of implication *vel non*, ever intended that a statute, which regulated the action of the investor under threat of criminal sanctions, was to be used as a basis for inferring an action in favor of the investor.

*Id.* at 1081. Thus, all the circuits that have had an opportunity to re-evaluate § 7, and especially the 1970 addition of § 7(f), in light of *Cort* refuse to continue to imply a private right of action under § 7.

This court concludes that, given an opportunity to do so, the Fifth Circuit will decline to follow *McCormick* and instead will refuse to recognize a private right of action. The circuit court perhaps foreshadowed such a result by way of *dictum* in *McNeal v. Paine, Webber, Jackson & Curtis, Inc.*, 598 F.2d 888, 890–91 n. 3 (5th Cir.1979):

> The existence of an implied private cause of action for violations of section 7 and Regulation T, however, is less certain. The addition in 1970 of section 7(f), 15 U.S.C. § 78g(f) ... made it illegal to obtain, as well as to extend, credit in violation of the margin rules, therefore casting in doubt the rationale of holdings in this circuit and others broadly granting borrowers a cause of action for margin violations. *Compare,* ... *McCormick v. Esposito* ... *with, e.g., Utah State University v. Bear, Stearns & Co.* .... Furthermore, recent Supreme Court decisions have restricted the implication of private causes of action in general. *See* ... *Cort v. Ash.*

> \* \* \* \* \* \*

In this case, the plaintiff (McNeal) alleged that Paine, Webber's employee (Skone) affirmatively concealed the fact that his accounts did not contain sufficient equity to comply with the margin requirements by informing him that he could ignore margin calls from Paine, Webber's offices. The district court held that on those facts McNeal had a cause of action under section 7. We express no opinion as to the correctness of that con-

clusion. If at some future juncture in this litigation McNeal's right of recovery depends upon the validity of his section 7 claim, we can at that time determine in what circumstances, if any, section 7 gives rise to an implied private right of action.

### III.

For the foregoing reasons, the court grants defendant's motion to dismiss plaintiffs' claims for violations of § 7 of the Securities and Exchange Act and Regulation U of the Federal Reserve Board.

SO ORDERED.